Joe ELKINS, Appellant,

v.

Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.

No. 97–1534.

United States Court of Veterans Appeals.

Feb. 17, 1999.

D.C. Daniel, Jr., was on the briefs for the appellant.

John H. Thompson, Acting General Counsel; Ron Garvin, Assistant General Counsel; Carolyn F. Washington, Deputy Assistant General Counsel; and Richard Mayerick were on the brief for the appellee.

Before NEBEKER, Chief Judge, and KRAMER, FARLEY, HOLDAWAY, IVERS, STEINBERG, and GREENE, Judges.

STEINBERG, Judge, filed the opinion of the Court. HOLDAWAY, Judge, filed a concurring opinion.

STEINBERG, Judge:

The appellant, veteran Joe Elkins, appeals through counsel a May 6, 1997, decision of the Board of Veterans' Appeals (Board or BVA) that determined that new and material evidence had not been presented to reopen a previously and finally disallowed claim for Department of Veterans Affairs (VA) service connection for an acquired psychiatric disorder. Record (R.) at 2. The appellant has filed a brief and a reply brief; the Secretary has filed a brief. On October 16, 1998, the Secretary filed a notice of supplemental authority as to *Hodge v. West,* 155 F.3d 1356 (Fed.Cir.1998). *See* U.S. VET.APP. R. 28(g) ("[w]hen pertinent and significant authorities come to the attention of a party after the party's brief has been filed ... party shall promptly advise the Clerk, by letter, with a copy to all other parties, setting forth citations"); *Penny v. Brown,* 7 Vet.App. 348, 351 (1995). This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).

The Court has convened en banc in order to consider the proper application of *Hodge, supra,* a matter of exceptional importance, and to maintain uniformity in our decisions. *See* U.S. VET.APP. R. 35(c); *Bethea v. Derwinski,* 2 Vet.App. 252, 254 (1992) ("[A] panel ... may not render a decision which conflicts materially with [an] earlier panel or en banc opinion. It is in this way we assure consistency of our decisions.").

For the reasons that follow, the Court will vacate the Board decision and remand the matter for further proceedings consistent with this opinion.

## I. Relevant Facts

This case was previously before the Court in 1993 when the Court affirmed an October 16, 1991, Board decision that new and material evidence had not been presented to reopen as to the same claim at issue in the instant appeal. *Elkins v. Brown,* 5 Vet.App. 474 (1993). *But see id.* at 478–83 (Steinberg, J., dissenting). The pertinent evidence as of 1991 was summarized in the Court's 1993 opinion. *Id.* at 476–77. The question whether there was new and material evidence presented as of that date turned on two letters from the veteran's private physician, Dr. Estes, dated August 1990 and January 1991. The letters stated, respectively:

> Joe Elkins is a patient under my care and [is] also being treated at [a] VA Hospital[.] He has had a problem with psychoses for a long period of time and in my medical opinion it is connected with conditions originating while in the service.

*Id.* at 477 (1990 letter); *see also* R. at 122.

> Joe Elkins is now a patient under my care [sic; no punctuation here] in Jan[uary] [19]64 while in the service he was treated for psychosis and depression. He experience [sic] hallucinations at the time and was treated for same. He was

diagnosed as hysteria [sic] and treated with Thorazine and Nembutal.

*Elkins,* 5 Vet.App. at 477 (1991 letter); *see also* R. at 140. In July 1992, while the case was on appeal to the Court, VA received a third letter from Dr. Estes, which stated in pertinent part:

> This is to state that I first saw the above-named patient while in private practice in Smithville, TN 2/2/87 and subsequently on several occasions until my retirement from private practice. . . . I treated Mr. Elkins primarily for a psychological problem previously diagnosed as hysteria with depression and a later diagnosis of schizophrenia, chronic undifferentiated type. I obtained the history that his condition began or was aggravated by his tenure in service. History also shows that he was under treatment in Murfreesboro, Tennessee. My treatment consisted of supportive care and continuation of psychotropic drugs. Throughout this time he exhibited marked depression as well as evidencing psychotic behavior including thought disassociation and social dysfunction.
>
> I have not previously been contacted by [VA] or other parties for this information even though I have remained at the same home address and address listed in the Physicians' Registry for the last twenty years. . . .
>
> A review of the court transcripts on this date show [sic], in my medical opinion, a relationship and correlation of this discharge diagnosis of hysteria with his later diagnosis of schizophrenia. This is in keeping with his treatment while in the service and my findings during the time I treated Mr. Elkins.

R. at 185. *See also Elkins,* 5 Vet.App. at 477. The veteran's attorney stated at the veteran's January 1997 hearing before the Board that Dr. Estes' July 1992 statement, quoted above, was based on Dr. Estes' having been sent the record on appeal from the prior appeal to this Court. R. at 307.

In its 1993 opinion, the Court considered the above-quoted 1990 and 1991 letters from Dr. Estes and concluded:

The Court agrees with the Board's conclusion that Dr. Estes' letters are not "material." First, neither letter contains a current diagnosis of a psychiatric disorder. Second, the evidence indicates that appellant was first seen by Dr. Estes over 20 years after separation from service. The January 3, 1991, letter is simply appellant's recitation of his history, and does not establish, in any way, a relationship between any claimed disability in service and any currently claimed disorder. The August 2, 1990, letter which states that appellant "has had a problem with psychoses" and "it is connected with conditions originating in service," also recites history provided by appellant. Although Dr. Estes examined appellant on many occasions, there is no indication that he formed this opinion on a basis separate from appellant's recitation of his medical and service background. Further, Dr. Estes conspicuously does not discuss the well-documented pre-service problems of the appellant, such as his lifelong emotional instability, in rendering his opinion. Neither Dr. Estes' letters, nor his medical records, indicate that he reviewed appellant's service medical records or other relevant documents, which would have enabled Dr. Estes to form an opinion as to service connection based on independent grounds. . . .

It is important to note that the Court does not doubt the honesty of Dr. Estes. The presumption of credibility of the evidence does not come into play. *See Justus v. Principi,* 3 Vet.App. 510, 513 (1992). Rather, the issue here is the basis upon which Dr. Estes' statements were made, i.e., appellant's own account of his medical history and service background, recitations which have already been rejected by the [VA regional office (RO)] and BVA. On the facts presented, we hold that Dr. Estes' statements are not "material" evidence. The Court concludes, therefore, that the BVA was correct in finding that no new and material evidence had been presented.

*Elkins,* 5 Vet.App. at 478.

In the decision here on appeal, the BVA stated (quoting *Evans (Samuel) v. Brown,* 9

Vet.App. 273 (1996)) that evidence is material for the purposes of reopening a previously and finally disallowed claim when it is "relevant to and probative of the 'issue at hand' ... [and] there is a reasonable possibility that, when viewed in the context of all of the evidence, both old and new, the additional evidence will change the disposition of the claim" (R. at 4) and subsequently found that certain evidence presented by the veteran was new but was not "probative of the issues at hand in this case" (R. at 9).

## II. Analysis

### A. Background

The requirement that new and material evidence be presented before a previously and finally disallowed claim may be reopened derives from two statutory provisions. Section 5108 of title 38, United States Code, provides: "If new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim." This positive command is accompanied by the following prohibition found in 38 U.S.C. § 7104(b): "Except as provided in section 5108 of this title, when a claim is disallowed by the Board, the claim may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered." *See Spencer v. Brown,* 4 Vet.App. 283, 286–87 (1993), *aff'd,* 17 F.3d 368 (Fed.Cir.1994); *see also* 38 U.S.C. § 7105(c) (as to finality of previous and final disallowance by a VARO of a claim); *Suttmann v. Brown,* 5 Vet.App. 127, 135 (1993) (holding that § 7105(c) finality rule "is subject to the exception in ... § 5108"). The relevant regulation concerning reopening, in effect since January 22, 1991, describes new and material evidence as

> evidence not previously submitted to agency decision makers which bears directly and substantially upon the specific matter under consideration, which is neither cumulative nor redundant and which by itself or in connection with evidence previously assembled is so significant that it must be considered in order to fairly decide the claim.

38 C.F.R. § 3.156(a) (1998).

In *Manio v. Derwinski,* issued shortly after the regulation's effective date, the Court made clear that when an appellant attempts to reopen a previously and finally disallowed claim, it must first be determined that new and material evidence has been presented before the claim can be addressed on the merits. 1 Vet.App. 140, 145 (1991). In *Manio,* the Court suggested that the Board's determination as to the existence of new and material evidence should be reviewed by this Court under a deferential standard. *Id.* at 146. The decision in *Manio* does not mention or cite to 38 C.F.R. § 3.156(a).

Shortly thereafter, in *Colvin v. Derwinski,* the Court attempted to clarify the definition of new and material evidence by holding:

> New evidence is not that which is merely cumulative of other evidence on the record. *Williams v. Sullivan,* 905 F.2d 214, 216 (8th Cir.1990). Material evidence is relevant [to] and probative of the issue at hand. *Chaney v. Schweiker,* 659 F.2d 676, 679 (5th Cir.1981). However, not every piece of new evidence, even if relevant and probative, will justify a reopening because some evidence is of limited weight and thus is insufficient to justify a new hearing. *Id.* The "bright line" rule in other federal courts is that to justify a reopening on the basis of new and material evidence, there must be a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome. *See Chisholm v. Secretary of Health and Human Services,* 717 F.Supp. 366, 367 (W.D.Pa.1989).

*Colvin,* 1 Vet.App. 171, 174 (1991). The Court compared this test to the text of 38 C.F.R. § 3.156(a) and found that the definition of new and material evidence set forth by the regulation was not "inconsistent with the standard set out in *Chisholm* that we adopt here." *Ibid.* Without addressing the deferential-review suggestion found in *Manio,* the Court in *Colvin* further held that, because the term "new and material evidence" was a broad statutory term requiring interpretation, the determination of whether new and material evidence has been presented was a question of law to be reviewed de novo. *Ibid.* (citing *Louisville and Nashville*

*R.R. Co. v. Kentucky Railroad Comm'n,* 314 S.W.2d 940, 942 (Ky.Ct.App.1958)). Subsequently, in *Cox (Billy) v. Brown,* 5 Vet.App. 95, 99 (1993), the Court pointed out that "the test adopted by this Court in *Colvin* represents the unanimous view of all ten U.S. . . . courts of appeals that have addressed this aspect of the standard for reopening [Social Security Disability] cases on the basis of 'new and material' evidence."

This definition of new and material evidence ultimately evolved into the three-question test summarized in *Evans (Samuel) v. Brown* as follows:

> [T]he first step of the *Manio* two-step process as to a claim to reopen involves three questions: **Question 1:** Is the newly presented evidence "new" (that is, not of record at the time of the last final disallowance of the claim and not merely cumulative of other evidence that was then of record, *see Struck v. Brown,* 9 Vet.App. 145, 151 (1996); *Blackburn [ v. Brown,* 8 Vet.App. 97, 102 (1995);] *Cox [ (Billy),* 5 Vet.App. at 98;] and *Colvin,* . . . *supra* )? **Question 2:** Is it "probative" of "the issue[s] at hand" (*Cox* and *Colvin,* both *supra* ) (that is, each issue which was a specified basis for the last final disallowance (*see Struck, supra* ))? **Question 3:** If it is new and probative, then, in light of all of the evidence of record, is there a reasonable possibility that the outcome of the claim on the merits would be changed (*see ibid.*)? As *Blackburn* indicated, affirmative answers to both questions 2 and 3—involving the probative nature of the "new" evidence and the reasonable possibility of outcome change, respectively—are required in order for "new" evidence to be "material."

*Evans (Samuel),* 9 Vet.App. at 283. The opinion in *Evans (Samuel)* reaffirmed de novo review by this Court of the Board's reopening determinations, *ibid.,* but did not mention or cite to 38 C.F.R. § 3.156(a).

While the *Colvin* test was being refined to the formulation it reached in *Evans (Samuel),* the Court also had occasion to compare it to the well-grounded-claim requirement set forth in 38 U.S.C. § 5107(a), which triggers the duty to assist. In *Moray v. Brown,* we noted that evidence that was not sufficient to well ground a claim "cannot serve as the predicate to reopen a claim under 38 U.S.C. § 5108" and that new and material evidence "is, by its nature, well[ ]grounded". *Moray,* 5 Vet.App. 211, 214 (1993) (quoting *Gobber v. Derwinski,* 2 Vet.App. 470, 472 (1992)). In *Robinette v. Brown,* we explained that, because the requirements of a well-grounded claim were lower than the requirements of new and material evidence under *Colvin,* a conclusion that new and material evidence has been presented necessarily meant that the claim was well grounded because only a "plausible" claim could satisfy the reasonable-possibility-of-outcome-change element of *Colvin.* *Robinette,* 8 Vet.App. 69, 76 (1995); *see also Wilkinson v. Brown,* 8 Vet.App. 263, 268 (1995); *Crowe v. Brown,* 7 Vet.App. 238, 247 (1994); *Gobber,* 2 Vet.App. at 472. In *Caluza v. Brown,* 7 Vet.App. 498, 506 (1995), *aff'd per curiam,* 78 F.3d 604 (Fed.Cir.1996) (table), the Court concluded that a well-grounded service-connection claim generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the asserted in-service disease or injury and the current disability. The three elements of a well-grounded service-connection claim set forth in *Caluza* were expressly adopted by the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *Epps v. Gober,* 126 F.3d 1464, 1468 (Fed.Cir.1997), *cert. denied sub nom. Epps v. West,* — U.S. —, 118 S.Ct. 2348, 141 L.Ed.2d 718 (1998) (mem.). In *Edenfield v. Brown,* we suggested that the difference, if any, between the evidence necessary to present a well-grounded ("plausible") claim and that needed to satisfy the third new-and-material-evidence requirement ("reasonable possibility") was slight. *Edenfield,* 8 Vet.App. 384, 390 (1995) (en banc). However, no opinion of this Court has ever suggested that evidence that was sufficient to reopen might not be sufficient to well ground a claim.

Shortly before the Court issued *Evans (Samuel),* the Federal Circuit issued *Barnett v. Brown,* which addressed the role of new and material evidence in the adjudicative

process. *Barnett*, 83 F.3d 1380 (Fed.Cir. 1996). *Barnett* held that the Board may not consider a previously and finally disallowed claim unless it finds that new and material evidence has been presented, and that before the Board may reopen such a claim it must so find. *Id.* at 1383. The Federal Circuit further noted (for the purpose of determining its own jurisdiction to decide the question) that "the question of whether evidence in a particular case is 'new and material' is either a 'factual determination' under [38 U.S.C. § ] 7292(d)(2)(A) or the application of law to 'the facts of a particular case' under [38 U.S.C. § ] 7292(d)(2)(B)." *Ibid.* Thereafter, this Court held in *Butler v. Brown* that "once the Board finds that no such evidence has been offered, that is where the analysis must end", *Butler*, 9 Vet.App. 167, 171 (1996) (case citations omitted), and reaffirmed de novo review as the proper standard for this Court's review of BVA reopening determinations, *id.* at 170.

■■■ Recently, the Federal Circuit decided *Hodge*, 155 F.3d 1356. In relevant part, *Hodge* overruled *Colvin* and its progeny as to the materiality element of the new-and-material-evidence test, by holding that this Court's materiality test "may be inconsistent with the underlying purposes and procedures of the veterans' benefits award scheme." *Id.* at 1360. In rejecting the *Colvin* test for material evidence, the Federal Circuit concluded that the VA regulation at 38 C.F.R. § 3.156(a) was a "reasonable interpretation" of the materiality requirement in 38 U.S.C. § 5108 (requiring disallowed claims to be reopened upon the presentment or securing of new and material evidence) and must govern decisions on whether to reopen previously and finally disallowed claims. The Federal Circuit stated that the regulation emphasized the importance of a complete evidentiary record for the evaluation of the veteran's claim rather than the effect of the new evidence on the outcome. *Hodge*, 155 F.3d at 1363; *cf. Colvin*, 1 Vet. App. at 174 (final step of *Colvin* test, regarding reasonable possibility of outcome change, is conducted by examining *"all the evidence, both new and old"* (emphasis added)). Moreover, *Hodge* stressed that under the regulation new evidence that was not likely to convince the Board to alter its previous decision could be material if that evidence provided "a more complete picture of the circumstances surrounding the origin of a veteran's injury or disability, even where it will not eventually convince the Board to alter its rating decision." *Hodge*, 155 F.3d at 1363; *cf. Colvin*, 1 Vet.App. at 174 (for claim to be reopened there need be only "a *reasonable possibility* ... [of] change [of] outcome" (emphasis added)). The Federal Circuit noted, citing *Brown v. Gardner*, 513 U.S. 115, 117–18, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994), for the proposition that "any interpretive doubt must be resolved in the veteran's favor," that "the regulation imposes a lower burden to reopen than the *Colvin* test." *Hodge*, 155 F.3d at 1361, n. 1.

At this point, the Court notes that, in rejecting the *Colvin* reasonable-possibility-of-outcome-change test, *Hodge* effectively decoupled the existing relationship under the Court's caselaw between determinations of well-groundedness and of new and material evidence to reopen—i.e., that if there was new and material evidence to reopen under *Colvin*, the claim would of necessity also be well grounded, *see Moray* and *Gobber*, both *supra*—because that relationship was expressly predicated upon the reasonable-possibility-of-outcome-change element of *Colvin* that *Hodge* overturned. The effect of this decoupling is discussed in part II.C., below.

Finally, in declining to determine whether *Hodge*'s new evidence was material, the Federal Circuit, in deciding that the review of such a determination was not a matter within its jurisdiction under 38 U.S.C. § 7292(d), stated: "Either the Court of Veterans Appeals or the Board must make this *fact-specific* determination in the first instance." *Id.* at 1364, n. 2 (emphasis added); *see also Barnett*, 83 F.3d at 1383 ("whether evidence in a particular case is 'new and material' is ... not within this [the Federal Circuit]'s appellate jurisdiction" (citations omitted)). *Spencer*, 17 F.3d at 374.

It is against this background that the Court undertakes the following analysis in order to coalesce the binding precedents of the Federal Circuit in *Hodge, Epps,* and

*Barnett,* all *supra,* and produce an integrated and cohesive approach to the consideration of the threshold issues of reopening and well-groundedness.

### B. Standard of Review

■ Before the Court can consider the Board's determination that no new and material evidence was presented in the instant case, we must be clear on the proper standard of review in this Court of Board determinations regarding whether new and material evidence has been presented. In *Barnett,* as noted above, the Federal Circuit stated (for purposes of determining its own jurisdiction to decide the question) that "the question of whether evidence in a particular case is 'new and material' is either a 'factual determination' under [38 U.S.C. § ] 7292(d)(2)(A) or the application of law to 'the facts of a particular case' under [38 U.S.C. § ] 7292(d)(2)(B)," *Barnett,* 83 F.3d at 1383. In *Hodge,* the Federal Circuit stated that "[e]ither the Court of Veterans Appeals or the Board must make this *fact-specific* determination in the first instance." *Hodge,* 155 F.3d at 1364, n. 2. (emphasis added). Recently, subsequent to *Hodge,* this Court suggested in *Fossie v. West,* 12 Vet.App. 1, 5 (1998), *mot. for recons. or en banc decision pending* (Nov. 9, 1998), that whether evidence that was "new" was also "material" was to be decided under "[a] deferential standard of review". *Accord Evans (Walter) v. West,* 12 Vet.App. 22, 28 (1998) (citing *Fossie, supra* ); *Manio, supra.*

Whether a de novo or deferential standard of review is applied here to the Board's decision not to reopen determines the manner in which the Court will apply *Hodge* to the instant facts. Continued application of de novo review to all such Board determinations on reopening would mean that the Court would now proceed to consider whether there was new and material evidence in terms of 38 C.F.R. § 3.156(a). *See Evans (Samuel), supra; Butler,* 9 Vet.App. at 170; *Colvin, supra.* However, under a "deferential" standard of review, remand would generally be in order for the Board first to apply the regulation to the facts of the case. *See Russell v. Principi,* 3 Vet.App. 310, 320 (1992) (en banc) (not appropriate for Court to make de novo factual determinations which are "task for the Board in the first instance" (quoting *Webster v. Derwinski,* 1 Vet.App. 155, 159 (1991))); *cf. Winters v. West,* 12 Vet.App. 203, 208 (1999) (where, rather than remanding for Board first to apply 38 C.F.R. § 3.156(a) and *Hodge,* the Court *assumes* that newly presented evidence would be sufficient to reopen).

In *Miller v. Fenton,* the Supreme Court provided the following guidance for determining the proper standard of review:

Perhaps much of the difficulty in this area stems from the practical truth that the decision to label an issue a "question of law," a "question of fact," or a "mixed question of law and fact" *is sometimes as much a matter of allocation as it is of analysis.* At least in those instances in which Congress has not spoken and in which the issue falls somewhere between a pristine legal standard and a simple historical fact, the fact/law distinction at times has turned upon *a determination that,* as a matter of the sound administration of justice, *one* judicial *actor is better suited than another to decide the issue in question.*

*Miller,* 474 U.S. 104, 113–14, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985) (emphasis added); *see also Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 403, 110 S.Ct. 2447, 110 L.Ed.2d 359. In *Pierce v. Underwood,* the Supreme Court observed that "when ... [the] determination is one for which neither a clear statutory prescription nor a historical tradition exists, it is uncommonly difficult to derive from the pattern of appellate review of other questions an analytical framework that will yield the correct answer" as to what standard of review should apply. *Pierce,* 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). In *Pierce,* the Supreme Court determined that, in that case, the *Miller* standard argued in favor of deferential review of a mixed question of law and fact because the district court was "better positioned" to decide the question. In so deciding, *Pierce* noted:

One of the "good" reasons for conferring discretion on the [lower tribunal] is the

sheer impracticability of formulating a rule of decision for the matter in issue. Many questions that arise ... are not amenable to regulation by rule because they involve multifarious, fleeting, special, narrow facts that utterly resist generalizations-*at least for the time being.*

*Pierce,* 487 U.S. at 561–62, 108 S.Ct. 2541 (emphasis added) (quoting Maurice Rosenberg, *Judicial Discretion of the Trial Court, Viewed from Above,* 22 SYRACUSE L.REV. 635, 662–63 (1971)).

Given the learning from the above cases and the reality that a determination of the existence of new and material evidence now requires the direct application of 38 C.F.R. § 3.156(a) to a set of specific facts, this Court has concluded that Board determinations on reopening generally will no longer be considered to involve a question of law to be reviewed by this Court de novo. However, the question remains as to which deferential standard of review should ordinarily be applied to these determinations.

Under *Hodge, supra,* the determinations of both whether evidence is new and whether it is material are governed by the tests set forth in 38 C.F.R. § 3.156(a) ("[n]ew" evidence "means evidence not previously submitted to agency decision makers ... which is neither cumulative nor redundant"; "[m]aterial" evidence is new evidence "which bears directly and substantially upon the specific matter under consideration" and "which by itself or in connection with evidence previously assembled is so significant that it must be considered in order to fairly decide the merits of the claim"). Because both tests are set forth in the same regulation and are to be applied to the same evidence presented in support of reopening, we conclude that the same standard of review should generally apply to reviewing the application of both tests in the regulation to the facts of a particular case.

By statute, this Court is authorized to use certain specified standards of review as appropriate. Under 38 U.S.C. § 7261(a), the Court shall

(3) hold unlawful and set aside decisions, findings (other than those described in clause (4) of this subsection), conclusions, rules, and regulations issued or adopted by the Secretary, the Board of Veterans' Appeals, or the Chairman of the Board found to be—

(A) arbitrary[ and] capricious ... ;

. . .

(4) in the case of a finding of material fact made in reaching a decision in a case before the Department with respect to benefits under laws administered by the Secretary, hold unlawful and set aside such finding if the finding is clearly erroneous.

38 U.S.C. § 7261(a)(3), (4).

If the proper standard is the "clearly erroneous" standard of section 7261(a)(4), our power is well defined. "The Board's findings constitute clear error only where they are not supported by a plausible basis in the record." *Solomon v. Brown,* 6 Vet.App. 396, 401 (1994); *see also Cohen (Douglas) v. Brown,* 10 Vet.App. 128, 150 (1997); *Buzinski v. Brown,* 6 Vet.App. 360, 365 (1994); *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990). Under this standard, we cannot reverse a finding simply because we would have reached a different conclusion based upon the same record. *Gilbert,* 1 Vet.App. at 53. In order to reverse a finding under this standard, the evidence of record must leave the Court with "a definite and firm conviction that a mistake has been committed." *Id.* at 52 (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).

If the standard is "arbitrary and capricious" under section 7261(a)(3)(A), then applying the standard would become more problematic. In *Gilbert,* 1 Vet.App. at 58, we cited to the definition of "arbitrary and capricious" articulated by the Supreme Court in *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mutual Automobile Ins. Co.,* which states:

The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice

made. In reviewing that explanation, [the reviewing court] must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error in judgment. Normally, an agency [decision] would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. The reviewing court should not attempt itself to make up for such deficiencies; [it] may not supply a reasoned basis for the agency's action that the agency itself has not given. [The reviewing court] will, however, uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.

*Motor Vehicle Mfrs. Ass'n,* 463 U.S. 29, 42–43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (internal quotations and citations omitted).

However, the Federal Circuit has said, in addressing the "arbitrary and capricious" standard of review, that "[w]hile no uniform definition of this standard has emerged, it has been formulated in a variety of ways which suggest its meaning." *Hines on Behalf of Sevier v. Secretary of DHHS,* 940 F.2d 1518, 1527 (Fed.Cir.1991). The Federal Circuit quoted seven different formulations, refused to adopt a particular articulation, and concluded "that, regardless of the precise formulation used, 'arbitrary and capricious' is a highly deferential standard of review." *Id.* at 1528. Recently in *In re Zurko,* the Federal Circuit indicated that, under the "arbitrary and capricious" standard of review, determinations had to be affirmed "as long as they were made upon consideration of the proper factors." *In re Zurko,* 142 F.3d 1447, 1449 (Fed.Cir.1998) (interpreting 5 U.S.C. § 706(2)(A), which is identical to 38 U.S.C. § 7261(a)(3)), *cert. granted sub nom. Dickinson v. Zurko,* —— U.S. ——, 119 S.Ct. 401, 142 L.Ed.2d 326 (U.S. Nov. 2, 1998) (No. 98–377) (mem.). If we were to apply strictly the *Zurko* formulation, it appears that we would be limited to determining only whether the

Board considered 38 C.F.R. § 3.156(a) in making a new-and-material-evidence determination. Thus, under *Zurko* even if *the Court* were to conclude that the now-defunct, stricter *Colvin* test had been met, the Court would apparently have to defer to the Board in a case where the Board had applied 38 C.F.R. § 3.156(a) to determine that no new and material evidence had been presented. *Cf. Kaneko v. United States,* 122 F.3d 1048, 1051 (Fed.Cir.1997) (in applying "arbitrary and capricious" standard, agency's statutory and regulatory interpretations are still reviewed de novo).

Given such a result, the ambiguity of the Federal Circuit as to whether new-and-material-evidence determinations are questions of fact (giving rise to review under the "clearly erroneous" standard, *see* 38 U.S.C. § 7261(a)(4)) or questions of the application of law to fact (sometimes giving rise to review under the "arbitrary and capricious" standard, *see, e.g, Butts v. Brown,* 5 Vet. App. 532, 538–39 (1993) (en banc); *but cf. Rose, Beverly,* and *Smallwood, infra* ), and the uncertain state of the law as to what is permitted in "arbitrary and capricious" review (as noted above, *Zurko* is presently pending before the Supreme Court), we hold that new-and-material-evidence determinations will now generally be reviewed under a deferential standard and that the standard will ordinarily be the "clearly erroneous" standard. *See Rose v. West,* 11 Vet.App. 169, 171 (1998) ("clearly erroneous" review applies to determining whether a disability is service connected); *Beverly v. Brown,* 9 Vet. App. 402, 405 (1996) (same as to determining whether a preexisting disability was aggravated in service); *Smallwood v. Brown,* 10 Vet.App. 93, 97 (1997) (same as to determining rating percentage of disability under VA schedule for rating disabilities); *cf. Munn v. Secretary of DHHS,* 970 F.2d 863, 871 (Fed.Cir.1992) ("[h]ow much difference, if any, [application of the 'arbitrary and capricious' standard versus the "clearly erroneous" standard] would make in actual practice is a matter for academic debate"); *Butts,* 5 Vet.App. at 544 (Steinberg, J., concurring) (questioning whether there is any meaningful difference between "arbitrary and capri-

cious" and "clearly erroneous" standards of review). We say "generally", "normally", and "now" because we recognize that the circumstances of an individual case, coupled with the accumulation of BVA and RO experience in applying § 3.156(a) and the possible evolution of *Zurko, supra,* from time to time may call for the application of a de-novo or "arbitrary and capricious" standard of review—for example, a question whether certain evidence that is corroborative is "neither cumulative nor redundant" under § 3.156(a) might be considered a matter of interpretation of the regulation that should be reviewed by the Court de novo, *see Kaneko, supra; Paller v. Principi,* 3 Vet.App. 535, 538 (1992) ("in a situation such as is presented here, where there is an apparent split in scientific opinion, corroboration is particularly important and cannot be rejected as merely cumulative"). *See Pierce, supra* (as to "good" reasons for conferring discretion on lower tribunal "at least for the time being"); *cf. Winters, supra.*

### C. Application of Hodge

Notwithstanding both the changed substantive definition of new and material evidence and the new standard of review, it is axiomatic that where, before *Hodge,* the Board had determined that the new evidence met the higher threshold for new and material evidence under *Colvin,* it necessarily would have determined that such evidence also met the lower, post-*Hodge,* standard (assuming that the Board had correctly understood and applied the two definitions). In such a case, therefore, the Court will generally defer to the Board's decision to reopen and move on to consider the merits. In this case, however, the Board decided that new and material evidence had not been presented. Specifically, in the BVA decision here on appeal, the Board cited (as a basis for its conclusion that new and material evidence had not been presented to reopen the veteran's previously and finally disallowed claim), inter alia, *Evans (Samuel),* 9 Vet.App. at 282–84 (R. at 4), an opinion that had reiterated and clarified the criteria set forth in *Colvin, supra.* As discussed in part II.A., above, the opinion of the Federal Circuit in *Hodge* invalidated the *Colvin* criteria for determining the materiality of newly presented

evidence and held that VA's regulation on reopening, 38 C.F.R. § 3.156(a)—which the BVA decision here cited (R. at 3) but as to the language of which the Board made no specific findings in connection with the evidence in this case—must be applied for this purpose. *Hodge,* 155 F.3d at 1362.

Accordingly, and in light of the fact that the Court will now generally not review de novo such Board determinations on reopening but will instead determine whether those determinations are "clearly erroneous", the Court holds that remand is necessary on the facts of this case in order for the Board first to apply 38 C.F.R. § 3.156(a) and *Hodge. See Henderson v. West,* 12 Vet.App. 11, 20–21 (1998) (where Board had denied reopening, Court remanded question whether new and material evidence was presented to reopen previously and finally disallowed claim for BVA to readjudicate in accordance with 38 C.F.R. § 3.156(a) and *Hodge* ); *Russell* and *Webster,* both *supra.*

### D. Board Adjudication on Remand; Well–Groundedness of Claim After Reopening

■ As outlined in part II.A., above, *Hodge* has effectively decoupled the prior relationship that had existed under our case-law between determinations of well-groundedness and of new and material evidence to reopen, i.e., that a well-grounded claim was a prerequisite to having new and material evidence to reopen as to that claim. In addition, the new-and-material-evidence requirements are found in 38 U.S.C. §§ 5108, 7104(b), and 7105(c), whereas the requirement that a well-grounded claim must be submitted to trigger the duty to assist is found in 38 U.S.C. § 5107(a). Nothing in the statute or regulations links these two concepts. Now that *Hodge* has overruled the *Colvin* materiality test, the existence of a well-grounded claim no longer necessarily flows from a determination that new and material evidence has been presented. Put another way, *Hodge* implicitly held that new and material evidence can have been presented even though a claim is not well grounded.

Consequently, if upon remand in the instant case, the Board determines that new

and material evidence has been presented, it next must determine, as part of its "review [of] the former disposition of the claim" under section 5108, whether the appellant's claim, as then reopened, is well grounded in terms of all the evidence in support of the claim, generally presuming the credibility of that evidence (*see Robinette,* 8 Vet.App. at 75–76; *Caluza,* 7 Vet.App. at 505). *See Evans (Walter), supra* (affirming under *Hodge,* BVA determination that new and material evidence had been presented, followed by determination that claim was well grounded, followed by denial on merits); *Fossie, supra* (virtually the same); *Gilbert,* 1 Vet.App. at 54 (setting forth chronological obligations under which claimant must submit well-grounded claim under section 5107(a) before Secretary is obliged to assist in developing the claim under that section and to apply the equipoise doctrine under section 5107(b)); *see also Epps,* 126 F.3d at 1468–69 ("under [38 U.S.C.] § 5107(a), [VA] has a duty to assist *only* those claimants who have established 'well[-]grounded' (i.e., plausible) claims"). In this regard, the Court notes that, as outlined in *Winters,* 12 Vet.App. at 208, issued by the en banc Court concurrently with this opinion, if the Court, on de novo review of all the evidence of record in support of the claim, were to determine that *it is clear* that the veteran's underlying claim that is the subject of the reopening sought is not well grounded in terms of that favorable evidence (generally presuming its credibility, *see Robinette* and *Caluza,* both *supra*), the Court would not remand for the Board to apply 38 C.F.R. § 3.156(a) and *Hodge* because the failure to apply the regulation under such circumstances would not be prejudicial to the claimant. *See* 38 U.S.C. § 7261(b) (Court shall take due account of rule of prejudicial error); *Edenfield,* 8 Vet.App. at 390–91; *cf. Soyini v. Derwinski,* 1 Vet.App. 540, 546 (1991) (remand due to BVA's deficient reasons or bases statement under 38 U.S.C. § 7104(d)(1) would impose unnecessary burden on BVA where "overwhelming evidence" supports BVA decision).

If the Board finds on remand that the claim is reopened and is well grounded, it should under the 38 U.S.C. § 5107(a) duty to assist provide for a current medical examination, with the examiner directed to address the nexus issue after a review of all medical records and the claims file. *See Smith (George) v. Brown,* 8 Vet.App. 546, 553 (1996) (en banc) ("[w]hile the Board is not required to accept the medical authority supporting a claim, it must provide its reasons for rejecting such evidence and, more importantly, must provide a medical basis other than its own unsubstantiated conclusions to support its ultimate decision").

## III. Conclusion

Upon consideration of the foregoing analysis, the record on appeal, and the parties' pleadings, and in light of *Hodge, Epps,* and *Barnett,* all *supra,* the Court vacates the May 6, 1997, BVA decision and remands the matter for expeditious further development, as appropriate, and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 5107, 5108, 7104(a), (b)(d)(1); 38 C.F.R. § 3.156(a); *Hodge,* 155 F.3d at 1364; *Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991)— all consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act, Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court). *See Allday v. Brown,* 7 Vet.App. 517, 533–34 (1995). "On remand, the appellant will be free to submit additional evidence and argument" on the remanded claim. *Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992). The Court notes that a remand by this Court and by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West,* 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board

final decision is mailed to the appellant. *See Marsh v. West,* 11 Vet.App. 468, 472 (1998).

VACATED AND REMANDED.

HOLDAWAY, Judge, concurring:

I concur entirely with the excellent opinion of Judge Steinberg. I write separately only to give some insight as to how and why the necessity for this en banc opinion arose. The *Colvin* case, which was reversed by the Federal Circuit in *Hodge,* was decided 8 years ago. Many cases applying this rule have been reviewed by the Court and the Federal Circuit. Most decisions I have reviewed from the BVA have cited *both* the *Colvin* rule and the regulation as the legal basis for the administrative decision. I know of no case where it was argued that the two standards were inconsistent, that one rule was more rigorous than the other, or that the BVA had any difficulty in reconciling the *Colvin* standard with the regulation. I do not rule out the possibility that such an argument may have been raised.

Furthermore, I am aware of no claim that this test "undermined the operations of the veterans benefit system." *See Hodge,* 155 F.3d at 1364. As a veteran who served more than 30 years on active duty, I would have been sensitive to such an argument. Be that as it may, there is no doubt that the *Hodge* case, as it interpreted *Colvin* and the regulation, significantly reduced the standard of materiality for reopening a finally decided claim. This is not because the regulation requires less from a veteran than does the "reasonable possibility" test of *Colvin.* Indeed, it is difficult to envision that evidence could be "substantial" or "significant" (the key words of the regulation) unless there was at least a "reasonable *possibility* " that the claimant *might* ultimately prevail. True, there may have been some who confused "possibility" with "probability" or "likely," *see Hodge,* 155 F.3d at 1359, but the diligent and correct use of a dictionary would be the appropriate remedy for those few cases.

In any event, the *Colvin* test, properly understood and properly applied, is not necessarily a more rigorous standard than the regulation, as the Federal Circuit concedes in the *Hodge* opinion. *See* 155 F.3d at 1360

(concluding that the *Colvin* test "may be inconsistent"). However, the gloss that the Federal Circuit inexplicably added to the regulation (and by extension to the statute), after chiding this Court for doing the same, certainly does lower the bar. If all that is required for materiality is that "it contribute to a more complete picture" (what wouldn't?) or that it be found material solely out of concern for an "appearance of fairness," then the concept of materiality has been pretty well done away with, and the congressional intent to provide at least a minimum degree of finality has been eviscerated. As I wrote in *Colvin,* there is no conflict between the regulation and the "reasonable possibility" test. If properly understood, the latter complements the former by adding some substance and objectivity to its obscurity and total subjectivity. Nonetheless, the gloss that the Federal Circuit added to the regulation in *Hodge* has undoubtedly changed the dynamics of "materiality." It is now the task of this Court to faithfully implement the new standard. The opinions filed today in this case and in the *Winters* case do just that and they do it very well.