Kenneth E. GAHMAN, Appellant,

v.

Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.

No. 96–1303.

United States Court of Appeals for Veterans Claims.

June 4, 1999.

Robert A. Laughlin was on the pleadings for the appellant.

Robert E. Coy, Acting General Counsel; Ron Garvin, Assistant General Counsel; Carolyn F. Washington, Deputy Assistant General Counsel; and Gregory W. Fortsch were on the pleading for the appellee.

Before NEBEKER, Chief Judge, and HOLDAWAY and IVERS, Judges.

HOLDAWAY, Judge:

The appellant, Kenneth E. Gahman, appeals a June 1996 decision of the Board of Veterans' Appeals (BVA) which denied service connection for a chronic respiratory disorder. The appellant has filed a brief and the Secretary has filed a motion for summary affirmance. The Court has jurisdiction of the case under 38 U.S.C. § 7252(a). For the following reasons, the Court will affirm the decision of the BVA.

## I. FACTS

The appellant served in the U.S. Navy from June to November 1963. In February 1963, the appellant attended a preinduction examination and completed a medical history report. On this report, he characterized his present health as "good," but checked the appropriate box to indicate that he previously had suffered from whooping cough. The appellant did not indicate that he had suffered from any other respiratory condition or that he had been treated by a doctor for any condition in the past five years. Dr. C.R. Brown then performed the preinduction physical examination which did not reveal that the appellant suffered from any respiratory condition. In March 1963, the appellant completed a second medical history report. Again, he checked the box to note that he previously had whooping cough but did not report that he had suffered from any other respiratory condition or that he had been treated by a doctor in the past five years. In April 1963, the appellant completed a third medical history report. This time, the appellant did not report that he had ever suffered from a respiratory condition, including whooping cough. An April 1963 medical examination by Dr. R.D. Skinner found the appellant physically qualified for service. In June 1963, Dr. George D. Belcher performed a physical examination of the appellant and

did not report that the appellant suffered from any respiratory ailments. A photofluographic examination taken during this examination revealed an "essentially negative chest."

In July 1963, the appellant sought treatment for severe chest pains and "hard breathing." After the appellant was admitted to the hospital, Dr. C.W. McClary diagnosed him with bronchopneumonia. After the appellant was treated for 23 days in the hospital, Dr. W.J. Cassidy wrote a report summarizing the appellant's condition and treatment. In his report dated August 1963, Dr. Cassidy stated:

The patient ... was in good health until four weeks prior to admission when he noticed the onset of cough which was productive of thick, occasionally blood tinged sputum. There was an additional complaint of recurrent chest pains of a pleuritic variety on the left related to a rib fracture which had been there apparently two years.... The past history revealed pneumonic [sic] twice in the past with hospitalization being required for a period of two weeks in 1961. The previous episode was in 1958 and was treated at home. There was also a history of pertussis as a child and he had been rejected for a job in the past on the basis of an x-ray in 1960. The patient also reportedly had been in the Army prior to his enlistment in the Navy. He admitted to frequent expectoration during the three months prior to admission and to recurrent abdominal pains which were weekly and due to what he felt was a nervous upset.

The appellant was then released from the hospital as fit for duty. Later that month, an x-ray of the appellant's chest revealed a "semi-confluent infiltrate at the left lung base, with there being pleural reaction." However, in September 1963, the appellant again was admitted to the hospital for a respiratory ailment.

By November 1963, the appellant's condition had not improved and Dr. R.J. Trettel recommended that the appellant be discharged from service. A Board of Medical Survey was convened to determine whether or not the appellant in fact should be discharged from service. The panel of three doctors found:

[The appellant] was admitted to the U.S. Naval Hospital ... on 17 September 1963 with the diagnosis of PNEUMONIA, LOBAR, ORGANISM and CAUSE UNDETERMINED.

Approximately two days prior to admission, the patient noted the onset of chills, fever, generalized malaise, headache, and cough productive of mucopurulent sputum. Following an examination at his local dispensary, hospitalization was advised. He had also noted a moderate increase in his usual degree of shortness of breath. The patient was previously hospitalized at this hospital from 23 July 1963 until 15 August 1963, because of bronchopneumonia, involving the left lower lobe. There was an additional past history of pneumonia in 1959, and again in 1962. Since the age of fifteen[,] the patient has considered himself to have "pleurisy", characterized by shortness of breath, some wheezing, and intermittent cough; these symptoms seemed to be most prevalent during the wintertime of the year. Since the age of fifteen, the patient has consulted with private physicians because of these symptoms.... On systemic review, the patient gives a history of shortness of breath, especially on exertion. At ordinary activity, the patient was not aware of any shortness of breath. This symptom has been present throughout the year.

. . . .

[During the course of his treatment at the hospital,] chest x-rays revealed a progressive clearing of the pneumonic process and the final chest x-ray was considered normal. Pulmonary function studies were obtained and changes compatible with a moderately severe, restrictive ventilatory defect were noted. The maximum breathing capacity was 27 per cent [sic] of normal; the timed vital capacity at one second of expiration was 78 per cent [sic]. Repeat pulmonary function studies were obtained prior to discharge from the hospital and did not change significantly from those obtained earlier in the patient's hospitalization....

In view of the patient's past history, there appeared to be adequate evidence of chronic lung disease, which existed prior to enlistment and was of the degree, which would be considered disqualifying for enlistment. Although some of the findings are suggestive of pulmonary fibrosis and/or obstructive emphysema, clinically at this time, the syndrome is most compatible with bronchial asthma.

. . . .

The Board of Medical Survey is of the opinion that this patient does not meet the minimum standards for enlistment or induction as set forth by AR40–501. The patient is unfit for further Naval Service by reason of physical disability. The physical disability was neither incurred in, nor aggravated by, a period of military service. It is the recommendation of the Board that he be discharged from the U.S. Naval Service.

[The appellant] has been informed of the findings of the Board and does not desire to submit a statement in rebuttal.

In February 1975, the appellant filed a claim for compensation with the VA for his lung condition. In April 1975, a VA regional office (VARO) denied his claim on the basis that his condition preexisted and was not aggravated by military service. In March 1981, the appellant unsuccessfully attempted to reopen his claim. In support of his claim, he submitted medical treatment reports from Dr. Wilton Anderson which indicated that Dr. Anderson had treated the appellant for various respiratory conditions, including pneumonia, between January 1975 and February 1981.

In April 1992, the appellant again attempted to reopen his claim for compensation. In support of his claim, the appellant submitted medical reports from a VA medical center where he was receiving treatment. These medical reports indicated that the appellant had received treatment for a lung condition from October to November 1967. The appellant also submitted additional medical records which showed that he was treated for a lung condition from November 1990 to March 1992. In June 1992, a VARO determined that the appellant had failed to submit new

and material evidence to reopen his claim. The appellant then filed a timely Notice of Disagreement to appeal his claim to the BVA.

In October 1992, the appellant testified at a personal hearing. At this hearing, the appellant testified that prior to enlisting in the Navy, he had never been treated for a respiratory condition, nor had he been hospitalized for pneumonia. He also stated that contrary to his service medical records, he had never served in the U.S. Army and had never been rejected from a job due to his lung condition. He related that he first became aware of the respiratory problems when he was in the Navy. The appellant testified that he did not know where his military doctors received this erroneous information regarding his medical history. Finally, he stated that since his military service, he frequently has sought treatment for a variety of respiratory ailments.

Later that month, the appellant submitted another statement in support of his claim. He stated that he believed his respiratory problems began after a series of training drills. One was a fire-fighting training drill in which he inhaled a lot of smoke. The other drill was a gas mask drill in which he inhaled some tear gas. The appellant also attributed his condition to the hot and humid conditions prevalent during his basic training. In addition, the appellant submitted medical reports which stated that he was treated for various respiratory conditions at different facilities from April 1966 to November 1971.

In November 1992, the appellant was examined by Dr. John Holt for compensation and pension purposes. During this examination, the appellant reported to Dr. Holt that he first began to experience respiratory problems during military service. Dr. Holt then determined that the appellant suffered from chronic obstructive pulmonary disease. Later, the appellant submitted additional medical records to document the treatment of his medical condition from April 1992 to May 1993.

In August 1995, the BVA remanded the appellant's claim back to the VARO to verify

whether or not the appellant had military service prior to 1963 and to obtain the appellant's medical records prior to enlistment. Pursuant to the BVA's remand, the VARO ascertained that the appellant did not serve in the armed forces prior to enlistment in the U.S. Navy in 1963. Furthermore, the VARO was unable to procure any of the appellant's medical records prior to enlistment. His case was then transferred back to the BVA.

In June 1996, the BVA denied the appellant's claim for compensation. The BVA initially noted that the appellant's entrance examination's were negative for any respiratory condition, thus, he "is entitled to the presumption of physical soundness unless clear and unmistakable evidence demonstrates that the injury of disease existed before service and was not aggravated therein." The BVA then found that the evidence of record clearly and unmistakably illustrated that the appellant had a respiratory condition prior to enlistment. The BVA based its opinion on the service medical reports and the findings of the Board of Medical Survey, which both indicated that the appellant had a preexisting medical condition. The BVA found that this evidence was more probative than the appellant's later testimony because it was closer in time to the incidents in question. Furthermore, the BVA considered it likely that the appellant would have accurately informed his physicians during service because these statement would be used for their treatment of his condition. Finally, the BVA noted that the appellant had the opportunity but chose not to offer a statement in rebuttal of the findings of the Board of Medical Survey.

## II. ANALYSIS

### A. New and Material Evidence

■ In order to reopen a claim previously disallowed, a veteran must first submit new and material evidence. *See* 38 U.S.C. § 5108; 38 C.F.R. § 3.156 (1998). Once the appellant has submitted new and material evidence, the BVA must evaluate the merits of the claim in light of all the evidence of record, both old and new. *Manio v. Derwinski,* 1 Vet.App. 140, 145 (1991). This Court reviews the BVA's determination as to whether or not new and material evidence

has been submitted under the deferential, "clearly erroneous" standard of review. *Elkins v. West,* 12 Vet.App. 209, 217–218 (1999) (en banc); *Winters v. West,* 12 Vet.App. 203, 207 (1999) (en banc). Under this standard, if there is a "plausible basis" in the BVA's finding of new and material evidence, this Court must affirm the BVA's determination, even if the Court would have reached a different conclusion based upon the same record. *Elkins,* 12 Vet.App. at 216.

In this case, the appellant's claim for compensation for a respiratory disorder had been denied in April 1975. In 1981, the appellant unsuccessfully attempted to reopen his claim for compensation. Since that time, the appellant has submitted numerous medical records as well as his own testimony concerning the origins of his respiratory condition. The BVA concluded that this evidence was new and material and reopened the appellant's claim for compensation. After a review of the record on appeal, the Court cannot find that this determination was "clearly erroneous" and concludes that the BVA lawfully reopened the appellant's claim for compensation.

### B. Presumption of Soundness

■ The threshold question in the appellant's claim for compensation is whether or not his respiratory condition preexisted and was not aggravated by his military service. In order to find that a condition, which was not noted on the veteran's entrance examination, preexisted service, the evidence of record must be sufficient to overcome the presumption of sound condition. 38 U.S.C. § 1111. Section 1111 provides:

> [E]very veteran shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment, or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service.

*Id.; accord* 38 C.F.R. § 3.304(b) (1998). The explicit language of this statute requires that the Secretary demonstrate by "clear and un-

mistakable evidence" that the injury existed before acceptance. The burden of proof to rebut this presumption rests with the Secretary. *Kinnaman v. Principi*, 4 Vet.App. 20, 27 (1993). Even though the BVA's decision involves findings of fact, whether or not the presumption of soundness has been overcome is a legal question in nature which the Court reviews under a de novo standard of review. *Bagby v. Derwinski*, 1 Vet.App. 225, 227 (1991).

In this case, the appellant's entrance medical examinations were negative for any chronic respiratory condition; therefore, the Secretary must present clear and unmistakable evidence to show that the appellant's chronic respiratory condition preexisted his military service. After a review of the record on appeal, the Court holds that the Secretary has presented clear and unmistakable evidence to overcome the presumption of soundness. The appellant's service medical records and the findings of the Board of Medical Survey clearly and unmistakably demonstrate that the appellant's condition preexisted and was not aggravated by military service.

■ The Court notes that the military physicians and the Board of Medical Survey based their conclusions exclusively on medical history provided by the appellant. The record on appeal does not indicate that either the military physicians or the Board of Medical Survey ever reviewed the appellant's medical records pertaining to his preservice respiratory problems. This Court has previously held that a "bare conclusion, even one written by a medical professional, without a factual predicate in the record does not constitute clear and unmistakable evidence sufficient to rebut the statutory presumption of soundness." *Miller v. West*, 11 Vet.App. 345, 348 (1998). Likewise, this Court has held that an appellant cannot transform bare transcriptions of lay history unenhanced by any medical comment into competent medical evidence for the purposes of submitting a well-grounded claim. *LeShore v. Brown*, 8 Vet. App. 406, 409 (1995).

■ However, in this case, contrary to the facts in *Miller*, there was a factual predicate for the Board of Medical Survey's conclusion, i.e., the appellant's own history filtered through the medical expertise of the Board of Medical Survey. Moreover, contrary to the facts in *LeShore*, this history was enhanced by the medical experts who opined that his current condition preexisted service. The Board of Medical Survey did not merely transcribe the statements of the appellant but rather supplemented his statements with their own findings and comments. Finally, the Board of Medical Survey which provided the factual history can be distinguished from an ordinary medical professional. The Board of Medical Survey is not merely a collection of three doctors, rather, it is an entity not unlike the BVA in that it is charged with adjudicating an issue and rendering a factual determination as to the cause and extent of a service member's disability. *See* 10 U.S.C. § 1203 ("Upon determination by the Secretary concerned that a member ... is unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability ... the member may be separated from the member's armed force."); 10 U.S.C. § 1216(b)(1) ("the Secretary concerned has all powers, functions, and duties incident to the determination under this chapter of the fitness for active duty of any member of an armed force under his jurisdiction"); 10 U.S.C. § 1216(a) ("The Secretary concerned shall prescribe regulations to carry out this chapter within his department.").

According to the Department of the NAVY DISABILITY EVALUATION MANUAL, Secretary of the Navy Instruction 1850.4D, paragraph 1004 (1998) (hereinafter DISABILITY EVALUATION MANUAL), the Board of Medical Survey, now known as a Physical Evaluation Board, "is established to act on behalf of the Secretary of the Navy in making determinations of Fitness to continue naval service." Similar to a proceeding at the VARO level or the BVA, a proceeding before a Board of Medical Survey is governed by statutes and regulations to ensure a fair and impartial hearing. *See* 10 U.S.C. § 1214 ("No member of the armed forces may be retired or separated for physical disability without a full and fair hearing if he demands it."); DISABILITY EVALUATION MANUAL, para. 4319. Set procedures have been established to notify the service

members of the actions to be taken by the medical board and their rights in that process. *See generally* DISABILITY EVALUATION MANUAL. Service members have the right to have an attorney appointed by the government or may hire their own counsel to represent them. *See id.* at para. 4310. Service members have the right to testify in their own behalf or present witnesses to support their contentions. *Id.* at para. 4312, 4327, 4328. If the service member is not satisfied with the Board of Medical Survey's disposition, he or she may file an appeal in the form of a Petition for Relief. *Id.* at para. 5001. After discharge, the service member may also file a petition to the Board of Correction of Naval Records. *Id.* The purpose of these rules is to ensure that service members are not separated without due process of law. *See id.* at para. 4312.

In this case, the appellant was separated for failure to meet the minimum standard for enlistment. The Board of Medical Survey found that the appellant's respiratory condition preexisted and was not aggravated by military service. The appellant was notified by the Board of Medical Survey of their proceedings. The Board of Medical Survey offered him the opportunity to respond to their findings and the appellant chose not to make a statement in his behalf. The Court concludes, therefore, that the unanimous findings of the professionals who constituted the Board of Medical Survey clearly and unmistakably rebut the presumption of soundness.

In his brief, the appellant argues that the Court should not accept the findings of the Board of Medical Survey because he claims it must have confused him with another service member. The Court is not persuaded by the appellant's argument. The appellant did not contest the findings of the Board of Medical Survey until almost 30 years after it rendered its decision when he testified in a personal hearing in 1992 that the findings were inaccurate. He had the opportunity to contest its findings on three previous occasions: in 1963 when it issued its decision, in 1975 when he first filed his claim for compensation, and in 1981 when he initiated his attempt to reopen. Furthermore, the appel-

lant had not provided any evidence, other than his own unsubstantiated allegations, to contradict the unequivocal opinion of Board of Medical Survey, which the Court finds sufficient to overcome the presumption of soundness. The Court simply will not substitute the appellant's medical opinion for that of the Board of Medical Survey's.

In sum, the required factual predicate for the Board of Medical Survey's conclusions lies in its adjudicative and fact-finding nature. If this evidence was merely a collection of three doctors' subjective findings, the Court's analysis might have been different. On the contrary, the nature of the Board of Medical Survey as an adjudicative entity enables it to be competent to render findings of fact not otherwise permitted by ordinary medical professionals.

### C. Presumption of Aggravation

Once the Secretary has overcome the presumption of soundness and it has been determined that the veteran's condition preexisted his military service, the BVA must find whether or not the appellant's preexisting condition was aggravated by his military service. Any preexisting condition which has increased in severity during military service generally will be presumed to have been aggravated by such service. 38 C.F.R. § 3.306 (1998). Section 3.306 provides:

> A preexisting injury or disease will be considered to have been aggravated by active military, naval, or air service, where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease.

*Id.* The BVA's finding as to whether or not the appellant's condition increased in severity during or was aggravated by military service is a finding of fact which is subject to the "clearly erroneous" standard of review. *Hunt v. Derwinski,* 1 Vet.App. 292, 295 (1991).

In this case, the BVA specifically found that the appellant's respiratory condition was not aggravated by his military service. The BVA also found that the appellant's condition did not increase in severity during service; thus, the presumption of ag-

gravation did not apply. Upon a review of the record on appeal, the Court finds a plausible basis in the record for the BVA's decision. The BVA based its decision on the opinions of the military physicians who treated the appellant and the Board of Medical Survey, both of whom found that the appellant's condition did not increase in severity during and was not aggravated by his service. Although the appellant was twice hospitalized for respiratory condition during service, the record on appeal reflects that he had been hospitalized for respiratory ailments on several occasions prior to enlistment. Since the BVA's decision is firmly based on the record, the Court cannot find that its decision was clearly erroneous.

### III. CONCLUSION

After consideration of the pleadings and a review of the record, the Court holds that the appellant has not demonstrated that the BVA committed either legal or factual error which would warrant reversal or remand. The Court is also satisfied that the BVA decision fulfills the "reasons or bases" requirements of 38 U.S.C. § 7104(d)(1). *See Gilbert v. Derwinski,* 1 Vet.App. 49 (1990).

The decision of the BVA is AFFIRMED.