Citation Nr: 1452654 
Decision Date: 11/28/14 Archive Date: 12/02/14

DOCKET NO. 09-06 536 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) in Chicago, Illinois


THE ISSUES

1. Whether new and material evidence has been received to reopen a previously-denied claim for entitlement to service connection for a back disability. 

2. Whether new and material evidence has been received to reopen a previously-denied claim for entitlement to service connection for a bilateral shoulder disability. 

3. Entitlement to service connection for a left knee disability to include residuals of frostbite. 

4. Entitlement to a disability rating in excess of 30 percent for residuals of frostbite of the left foot. 

5. Entitlement to a disability rating in excess of 30 percent for residuals of frostbite of the right foot. 

6. Entitlement to a disability rating in excess of 20 percent for bone loss of the anterior mandible with limitation of motion.
 
7. Entitlement to increased initial disability ratings for instability of the right knee, initially rated at 10 percent, with an increase to 20 percent as of April 6, 2012. 

8. Entitlement to an initial disability rating in excess of 30 percent for posttraumatic stress disorder (PTSD). 

9. Entitlement to service connection for a back disability.

10. Entitlement to service connection for a bilateral shoulder disability.

11. Entitlement to a total disability rating for compensation purposes based on individual unemployability due to service-connected disabilities (TDIU).

12. Entitlement to dependency and indemnity compensation based upon a claim for entitlement to service connection for the cause of the Veteran's death.


REPRESENTATION

Veteran represented by: Christopher J. Boudi, Attorney at Law


ATTORNEY FOR THE BOARD

Heather J. Harter, Counsel




INTRODUCTION

The Veteran served on active duty from July 1978 to May 1983. He died in January 2013. The appellant is his widow.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from multiple RO decisions of the VA RO in Indianapolis, Indiana. 

Following the Veteran's death, the Board dismissed these matters without prejudice to future substitution in a March 2013 decision. In August 2013, the VA's Pension Management Center in Milwaukee, WI, denied the appellant's claims for entitlement to service connection for the cause of the Veteran's death and entitlement to dependency and indemnity compensation. In September 2014, the Pension Management Center approved the appellant's application under the provisions of 38 U.S.C.A. § 5121A to be substituted in the place of the Veteran for purposes of pursuing the appeal which was pending at the time of his death (issues 1-11, identified above). 

The Board has reviewed the Veteran's physical claims file and also evidence available in his VA electronic files.

The issues of entitlement to service connection for a back disability, entitlement to service connection for a bilateral shoulder disability, entitlement to a TDIU, and entitlement to dependency and indemnity compensation based upon a claim for entitlement to service connection for the cause of the Veteran's death are addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).




FINDINGS OF FACT

1. The Veteran's claim for entitlement to service connection for a back disability was denied by the RO in August 2002. He did not appeal that decision to the Board, nor was any new and material evidence received within the following year.

2. New evidence received after the August 2002 denial relates to an unestablished fact and raises a reasonable possibility of substantiating the claim for entitlement to service connection for a back disability.

3. Service connection for a bilateral shoulder disability was originally denied in February 2004; the Veteran perfected a timely appeal of this denial to the Board in September 2005, and this appeal has remained active since that time.

4. The Veteran's service treatment records do not indicate frostbite affecting his left knee or any other left knee impairment during service.

5. The Veteran had cold injury residuals affecting both feet, including arthralgia, subjective numbness, nail abnormalities, and color change. He did not have other complications or residual effects of the in-service cold injury.

6. The Veteran sustained the loss of four teeth during a fall in service; he did not have loss of any portion of the mandibular bone or limitation of temporomandibular articulation as a result of the fall; and he did not have loss of any portion of the mandibular bone or limitation of temporomandibular articulation during a 2012 VA examination or as reflected in his recent VA treatment records.

7. The Veteran's right knee instability was most accurately described as "slight" in nature prior to the April 2012 VA examination, and as "moderate" in nature on and after that date. 

8. Throughout the appeal period, the Veteran's PTSD has caused occupational and social impairment with no more than occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks.


CONCLUSIONS OF LAW

1. The August 2002 denial of service connection for a back disability is final. 38 U.S.C.A. § 7105 (West 2002); 38 C.F.R. §§ 20.302, 20.1103 (2014).
 
2. Evidence received since the August 2002 denial of service connection for a back disability is new and material; therefore this claim is reopened. 38 U.S.C.A. §§ 5107, 5108 (West 2002); 38 C.F.R. § 3.156 (2014).

3. Absent a final denial of service connection for a bilateral shoulder disability, new and material evidence is not required to reopen the denial. 38 U.S.C.A. §§ 5107, 5108, 7105 (West 2002); 38 C.F.R. §§ 3.156, 20.302, 30.305, 20.1103 (2014).

4. Service connection for a left knee disability, to include residuals of frostbite, is not warranted. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2002); 38 C.F.R. § 3.303 (2014).

5. Disability ratings greater than 30 percent for cold injury residuals affecting each foot are not warranted. 38 U.S.C.A. § 1155, 5107 (West 2002); 38 C.F.R. § 4.104, Diagnostic Code 7122 (2014).

6. A disability rating greater than 20 percent for bone loss of the anterior mandible with limitation of motion is not warranted. 38 U.S.C.A. § 1155, 5107 (West 2002); 38 C.F.R. § 4.150, Diagnostic Codes 9904, 9905 (2014).

7. Disability ratings greater than 10 percent prior to April 6, 2012, and greater than 20 percent on and after that date, for instability of the right knee is not warranted. 38 U.S.C.A. § 1155, 5107 (West 2002); 38 C.F.R. § 4.71a, Diagnostic Code 5257 (2014).

8. A disability rating greater than 30 percent for PTSD is not warranted. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 4.126, 4.130, Diagnostic Code 9411 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to notify and assist

VA has a duty to provide notification to the Veteran (and now the appellant) with respect to establishing entitlement to benefits, and a duty to assist with development of evidence under 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. § 3.159(b). The duty to notify was satisfied prior to the initial RO decisions involving the service connection claims by letters dated in August 2006, March 2008, March 2010, and November 2012 to the Veteran that informed him of his and VA's duty for obtaining evidence. Pelegrini v. Principi, 18 Vet. App. 112 (2004). The letters also provided notice of information and evidence needed to establish disability ratings and an effective date. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

With regard to claims to reopen based upon the submission of new and material evidence, the Court of Appeals for Veterans Claims (Court) has held that the terms "new" and "material" have specific, technical meanings that are not commonly known to VA claimants. Because these requirements define particular types of evidence, when providing the notice required by the VCAA, it is necessary, in most cases, for VA to inform claimants seeking to reopen a previously and finally disallowed claim of the unique character of evidence that must be presented. This notice obligation does not modify the requirement that VA must provide a claimant notice of what is required to substantiate each element of a service-connection claim. Kent v. Nicholson, 20 Vet. App. 1 (2006). Such information was provided to the Veteran in a letter dated in November 2012.

No additional notification to the appellant is required, because she has effectively stepped into the Veteran's shoes for purposes of this appeal. Because the notice provided to him was adequate, no further notification to her is needed. 38 U.S.C.A. § 5121A; 38 C.F.R. § 3.1010(f)(1).

VA also has a duty to assist a Veteran in the development of the claim. This duty includes assisting him in the procurement of service treatment records and other pertinent records, and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. The Board finds that all necessary development as to the issues decided herein has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. Bernard v. Brown, 4 Vet. App. 384 (1993). The claims file contains relevant service treatment and personnel records, VA treatment records, private medical treatment records, Social Security disability records, and VA examination reports. 

The Board finds that all reasonable efforts were made by VA to obtain evidence necessary to substantiate the claims decided herein and no further assistance to develop evidence is required.

Standard of review

Once the evidence has been assembled, it is the Board's responsibility to evaluate the record. 38 U.S.C.A. § 7104(a). When there is an approximate balance of evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102. In Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990), the Court stated that "a veteran need only demonstrate that there is an 'approximate balance of positive and negative evidence' in order to prevail." To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert, 1 Vet. App. at 54.

The Board must consider all the evidence of record and discuss in its decision all "potentially applicable" provisions of law and regulation. See 38 U.S.C. § 7104(a); Schafrath v. Derwinski, 1 Vet. App. 589, 592-93 (1991). The Board is also required to provide a statement of reasons or bases for its determination, adequate to enable an appellant to understand the precise basis for its decision, as well as to facilitate further appellate review. See 38 U.S.C. § 7104(d)(1); Allday v. Brown, 7 Vet. App. 517, 527 (1995); Gilbert, 56 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed.Cir.1996) (table).

The Board has thoroughly reviewed all the evidence in the Veteran's claims folder and in his electronic VA files. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the extensive evidence of record. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claim. The appellant must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (the law requires only that the Board address its reasons for rejecting evidence favorable to the appellant).


Laws and regulations

Generally, service connection may be granted for any disability resulting from injury suffered or disease contracted in line of duty, or for aggravation in service of a pre-existing injury or disease. 38 U.S.C.A. §§ 1110, 1131. Service connection may be established by demonstrating that the disability was first manifested during service and has continued since service to the present time or by showing that a disability which pre-existed service was aggravated during service. Service connection may be granted for any disease diagnosed after discharge from service, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303.

To establish a right to compensation for a present disability on a direct basis, a Veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service." Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

Pursuant to 38 U.S.C.A. § 5108, the VA must reopen a finally disallowed claim when new and material evidence is presented or secured with respect to that claim. New evidence means existing evidence not previously submitted to agency decision makers. Material evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156. Notwithstanding any other provision, at any time after VA issues a decision on a claim, if VA receives or associates with the claims file relevant official service department records that existed and had not been associated with the claims file when VA first decided the claim, VA will reconsider the claim, notwithstanding the provisions of 38 C.F.R. § 3.156(a). Such records include service records that are related to a claimed in-service event, injury, or disease. However, this provision does not apply to records that VA could not have obtained when it decided the claim because the records did not exist when VA decided the claim. 38 C.F.R. § 3.156(c). 

The requirement of the receipt of new and material evidence to reopen a claim is a material legal issue that the Board is required to address on appeal, regardless of the RO's action in the matter. Barnett v. Brown, 83 F.3d 1380, 1383-84 (Fed. Cir. 1996).

When a claim to reopen is presented, a two-step analysis is performed. The first step of which is a determination of whether the evidence presented or secured since the last final disallowance of the claim is 'new and material' as defined above. See Elkins v. West, 12 Vet. App. 209, 218-19 (1999) (en banc). Second, if VA determines that the evidence is new and material, VA may then proceed to evaluate the merits of the claim on the basis of all evidence of record, but only after ensuring that the duty to assist has been fulfilled. In order for evidence to be sufficient to reopen a previously disallowed claim, it must be both new and material. If the evidence is not new and material, the inquiry ends and the claim cannot be reopened.

In determining whether the evidence is new and material, the credibility of the newly presented evidence is presumed. Kutscherousky v. West, 12 Vet. App. 369, 371 (1999) (per curiam). The Board is required to consider all of the evidence received since the last disallowance. Hickson v. West, 12 Vet. App. 247, 251 (1999).

The Court has explained that the language of 38 C.F.R. § 3.156(a) creates a low threshold, and views the phrase "raises a reasonable possibility of substantiating the claim" as "enabling rather than precluding reopening." The Court emphasized that the regulation is designed to be consistent with 38 C.F.R. § 3.159(c)(4), which "does not require new and material evidence as to each previously unproven element of a claim." Shade v. Shinseki, 24 Vet. App. 110 (2010).

Disability evaluations are assigned to reflect levels of current disability. The appropriate rating is determined by the application of a schedule of ratings which is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. When there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

In evaluating claims for increased ratings, we must evaluate the veteran's condition with a critical eye toward the lack of usefulness of the body or system in question. 38 C.F.R. § 4.10. A disability of the musculoskeletal system is measured by the effect on ability to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. Weakness is as important as limitation of motion in assigning the most accurate disability rating. 38 C.F.R. § 4.40. Although § 4.40 does not require a separate rating for pain, it does provide guidance for determining ratings under other diagnostic codes assessing musculoskeletal function. The Board has a special obligation to provide a statement of reasons or bases pertaining to § 4.40 in rating cases involving pain. Spurgeon v. Brown, 10 Vet. App. 194 (1997).

Because this appeal has been ongoing for a lengthy period of time, and because the level of a veteran's disability may fluctuate over time, the VA is required to consider the level of the veteran's impairment throughout the entire period. In this respect, staged ratings are a sensible mechanism for allowing the assignment of the most precise disability rating-one that accounts for the possible dynamic nature of a disability while the claim works its way through the adjudication process. O'Connell v. Nicholson, 21 Vet. App. 89 (2007). In another relevant precedent, the Court noted that staged ratings are appropriate for an increased rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. In reaching this conclusion, the Court observed that when a claim for an increased rating is granted, the effective date assigned may be up to one year prior to the date that the application for increase was received if it is factually ascertainable that an increase in disability had occurred within that timeframe. 38 U.S.C.A. § 5110; Hart v. Mansfield, 21 Vet. App. 505 (2007).

 Back 

Service connection for a disability of the upper and lower back was denied in August 2002 on the basis that no current disability was shown, and no nexus to service was shown. At that time, the Veteran asserted that his back problems were caused by a fall off a cliff during nighttime maneuvers during service. The RO acknowledged the fall from the cliff, but found that the Veteran had no evidence of a current diagnosis involving his back. He did not perfect an appeal as to this denial, nor submit new and material evidence within one year, and it therefore became final one year after he was notified of the decision. 38 U.S.C.A. § 7105; 38 C.F.R. §§ 20.302, 20.1103. 

The Veteran filed the instant claim in July 2006. VA treatment records reflect that prior to his death, the Veteran was being treated for chronic low back pain and lumbar radiculopathy. Additionally, recently-received Social Security disability records reflect that the Veteran had diagnosed back problems. 

The Board finds that the VA medical records reflecting diagnosis and treatment for back pain constitutes new and material evidence to reopen the claim for entitlement to service connection for a back disability. This information was not previously of record, and it bears directly and substantially upon the specific matter under consideration, as the prior denial rested in part upon the absence of a current disability at that time. Furthermore, the new evidence is neither cumulative nor redundant, and by itself or in connection with evidence previously assembled is so significant that it must be considered in order to fairly decide the merits of the claim. 38 C.F.R. § 3.156(a); Shade. Therefore, the claim is reopened. To this extent, only, the claim is granted.

Further evidentiary development is necessary prior to addressing the merits of the reopened claim, as discussed in the remand which follows.

 Shoulders

Service connection for a bilateral shoulder disability was denied in February 2004, on the basis that no connection to service or to the Veteran's fall from a cliff during service was shown. He was notified of this denial in the same month. In September 2004, before the denial of service connection had become final, he requested to "reopen" the shoulder claim. He submitted some August 2004 medical records reflecting degenerative changes at the acromioclavicular joint with impingement of the supraspinatus tendon. He also submitted a statement from a fellow soldier who recalled when the Veteran fell off a cliff during nighttime exercises, hurting his back and shoulders. The RO properly interpreted the September 2004 submission as a notice of disagreement with the February 2004 denial, and issued a Statement of the Case in July 2005. 

The RO received an appeal to the Board from the Veteran on September 26, 2005. The RO then sent the Veteran a letter informing him that his appeal was late, as it had to be received by September 25, 2005. While the RO was correct as to the appeal deadline, the RO did not consider the regulatory provisions that without a postmark of record (which there is not here), the document is considered to be filed as much as five days prior to receipt by VA. 38 C.F.R. § 20.305. Considering the appeal was received only one day past the deadline, this rule makes it a timely filing.

Ever since January 2006, the RO has treated the shoulder claim as having been finally denied, and requiring new and material evidence to reopen. The Board finds, however, that the proper procedural posture of this claim is instead that the original claim remains on appeal, having been perfected by the Veteran in September 2005. 

Because the Board finds that further evidentiary development is necessary prior to further review of this claim, we simply offer this analysis for purposes of clarifying the proper procedural posture of this claim and declaring that no new and material evidence is required to support a de novo review at this point.

 Left knee

Service treatment records reflect that the Veteran sustained frostbite to both feet and received treatment for such. No upper leg or knee involvement was shown however. No complaints or treatment involving the left knee are reflected in the service treatment records. 

During a September 2008 VA examination, the Veteran had painful motion, weakness and tenderness in his left knee. The examiner noted that the veteran had frostbite of both knees secondary to cold injury, and that there was no additional diagnosis due to residuals of the cold injury. The Veteran failed to report for X-ray studies, however. 

The Veteran underwent another VA examination in April 2010. At that time, he provided a history of having severe pain in both feet following exposure to frigid temperatures in Alaska. He reported numbness, tingling, swelling and blistering of his feet, but no complaints with his knees other than stiffness for a few hours, which went away after he warmed up. Upon clinical examination, he had normal range of left knee motion without painful limitation. He had normal strength in the left knee and no ligament instability. The examiner noted a moderate amount of crepitus upon motion and slight effusion of the left knee joint. An X-ray study showed a small bony spur at the anterior aspect of the upper patella. The examiner rendered a diagnosis of a mild strain of the left knee. The examiner also rendered the medical opinion that the Veteran's left knee symptoms were less likely due to frostbite based upon the Veteran's own history of having no blistering , swelling, or limited mobility of the knee after his cold injury during service. 

The Board finds this medical opinion to be more probative of the Veteran's situation than the September 2008 opinion. The April 2010 examiner's opinion is consistent with the Veteran's service treatment records, which show no contemporaneous complaints or findings involving his left knee. Furthermore, the September 2008 examiner did not identify any particular symptoms which were linked with the "frostbite of both knees." In this regard, we note that although the Veteran had painful motion, weakness, and tenderness in his left knee during the 2008 examination; he did not display any of these symptoms during the 2010 examination. 

Upon review, the Board holds that the preponderance of the evidence is against the claim for service connection for a left knee disability, to include as a residual of frostbite. The benefit sought is therefore denied.

 Residuals of frostbite affecting the left foot and the right foot

As noted above, the Veteran experienced an episode of intense cold exposure during service and sustained frostbite injuries to his feet. Service connection was granted in 2002. The 30 percent disability rating assigned to each foot at the time of the Veteran's death had been in effect since 2003. The Veteran asserted, however, that a higher disability rating was warranted, and had perfected appeals as to the disability ratings assigned to each foot. 

Cold injury residuals are rated using the criteria set forth in 38 C.F.R. § 4.104, Diagnostic Code 7122. The 30 percent assigned to each of the Veteran's feet represents arthralgia or other pain, numbness, or cold sensitivity plus two or more of the following: tissue loss, nail abnormalities, color changes, locally impaired sensation, hyperhidrosis, X-ray abnormalities (osteoporosis, subarticular punched out lesions, or osteoarthritis). This is the highest schedular rating provided for cold injury to an extremity. Notes appended to Diagnostic Code 7122 provide that each affected part, such as the hand, foot, ear, and nose should be evaluated separately and the ratings should be combined in accordance with 38 C.F.R. §§ 4.25 and 4.26. Amputations and complications such as carcinoma at the site of a cold injury scar, or peripheral neuropathy should be separately evaluated under other diagnostic codes. 

The medical evidence of record reflects that during a VA examination in February 2007, his feet had a normal skin color, and temperature with no edema. His skin was dry, with normal texture and no ulceration. There was no evidence of any hair growth on the feet or the toes. There was no evidence of fungal infection of the skin or the nails. The nails appeared to be slightly dystrophic and thickened. Neurologic reflexes were present and equal. Subjectively he reported numbness, but objectively, he had no decrease in pinprick or light touch. There was no weakness or atrophy of the feet muscles. There was no pain or stiffness in any joints affected by the cold injury, with no deformity or swelling of any joints. Range of motion was normal. The ligaments were not weakened. There were no flat feet, no calluses, no pain on manipulation of the joints, no loss of tissue. The peripheral pulses were palpable and equal, and there was no evidence of Raynaud's phenomenon. 

During a clinical examination in September 2008, the examiner noted hypopigmentation and lichenification along the soles and medial arches of both feet, with no edema, no abnormal temperature, no atrophy, and dry skin. There was no ulceration. There was decreased hair growth in both feet. There was no evidence of fungal infection. No toenails were deformed or atrophic and all toenails were present. Testing revealed decreased light touch and proprioception in both feet at the level of the malleolus. No motor weakness was noted. There were no calluses. The peripheral pulses were normal. There was no evidence of vascular insufficiency or Raynaud's phenomenon. 

During an April 2012 VA examination, it was noted that the Veteran had arthralgia, cold sensitivity, color changes, and nail abnormalities. X-ray studies were interpreted as showing osteoarthritis in the right foot. The examiner specified that the cold injuries had not resulted in functional impairment of any extremity such that no effective function remained other than that which would be equally well served by an amputation with prosthesis. No other pertinent physical findings, complications, conditions, signs, or symptoms resulting from a cold injury were identified.

Upon careful review, the Board holds that the 30 percent disability rating assigned to each foot represented the highest possible rating which could have been assigned. The notes following Diagnostic Code 7122 provide that other disabilities that have been diagnosed as the residual effects of cold injury, such as Raynaud's phenomenon, muscle atrophy, etc., should be separately evaluated unless they are used to support an evaluation under Diagnostic Code 7122. 38 C.F.R. § 4.104. Here, the Veteran had not been diagnosed with any other disabilities that were the residual effects of cold injury. Although there were some notations of a decreased sensation, it appears that this was a subjective phenomenon only. Thus, no other diagnostic codes need be analyzed with respect to the evaluation of this Veteran's disabilities of cold injury residuals of each foot. Additionally, we note that the bilateral factor has been added into his combined disability rating since the cold injury residuals affect both feet. The preponderance of the evidence is against a higher disability rating for cold injury residuals affecting each foot.

 Bone loss of the anterior mandible

Historically, the Veteran injured his jaw and several lower teeth during the fall from the cliff. Service connection was granted effective in November 1998. A 20 percent disability rating based upon partial bone loss and limitation of jaw motion using the criteria set forth at 38 C.F.R. § 4.150, Diagnostic Codes 9904 and 9905 has been in effect since July 2006. 

Pursuant to the Veteran's claim for an increased rating, he underwent a comprehensive VA prosthodontic examination in May 2012. The examiner performed a thorough review of the service treatment records which reflected the original injury in service and compared these records to the Veteran's recent VA treatment records and the clinical examination findings. The examiner concluded that the Veteran had not lost any mandibular bone during the in-service accident, that his only loss had been four of his lower teeth. The examiner also concluded that the Veteran did not suffer from chronic limitation of temporomandibular articular motion. 

Review of the Veteran's recent VA treatment records reveals no information to the contrary.

Based upon these findings, the RO had planned a review of the disability rating assigned for these problems, apparently with the intention of proposing a reduction in the 20 percent disability rating. Given the Veteran's unfortunate death prior to this planned review, the Board will leave the 20 percent rating which was in effect at the time of his death undisturbed. We note, however, that there is no discernible basis for supporting an increase in the disability rating assigned. The preponderance of the evidence is against the claim for an increased disability rating and the appeal is denied.

 Right knee 

The Veteran sustained a right knee injury in service. At the time of his death, the knee injury residuals were rated for instability and also for limitation of motion. The Veteran only appealed that portion of the overall rating which was based upon instability, however. Therefore, the Board will only address the instability portion of the overall knee disability. 

When the rating was initially assigned, it was at 10 percent for slight recurrent subluxation or lateral instability of the knee. The Veteran had been service-connected for right knee strain for many years, so this was a grant of a separate rating based on the additional finding of instability. A 20 percent disability rating based upon recurrent subluxation or lateral instability of the knee was in place at the time of the Veteran's death, effective from April 6, 2012, and this represented moderate subluxation or instability. Under the provisions of Diagnostic Code 5257, severe subluxation or instability is rated as 30 percent disabling. 

VA outpatient records dated in March 2009 showed the Veteran complained of buckling of the right knee. Upon VA examination in 2010, he had some laxity of the medial collateral ligaments with stress and with 20 degrees of flexion. The anterior cruciate ligament appeared intact. Despite this notation of "some" laxity, the diagnoses included that medial and lateral collateral ligaments appeared grossly normal. Considering the medical finding that the ligaments were normal along with a notation of "some" laxity, it cannot reasonably be concluded that the instability was any more than slight, warranting only the 10 percent rating the RO initially assigned.

The report of an April 2012 VA examination reflects that the Veteran complained of falling when his right knee gave way. Upon clinical examination, tenderness to palpation of the soft tissues of the right knee was noted. The Veteran had normal muscle strength in the right knee. Testing for anterior instability revealed instability of 0 to 5 millimeters in the right knee. Testing for posterior instability revealed instability of 0 to 5 millimeters in the right knee. Testing for medial-lateral instability similarly revealed instability of 0 to 5 millimeters in the right knee. The examiner also noted that a magnetic resonance imaging study showed a sprain of his right anterior cruciate ligament. With regard to the impact of his right knee upon his employability, the examiner commented that the Veteran could not kneel, lift, or carry more than ten pounds. He could not walk without a cane and could not squat. Therefore it was the examiner's opinion that the Veteran could not perform labor work or drive a truck, although he would be able to do sedentary desk type work. Earlier VA treatment records reflect that the Veteran reported relying upon a sleeve-type brace for his right knee.

Upon careful review of the record, the Board holds that the Veteran's level of right knee instability is more nearly analogous to the criteria for a 20 percent disability rating, reflecting moderate instability. The examiner's assessment that the Veteran could not kneel or lift or carry more than ten pounds, and could not walk without a cane, along with the findings of instability between 0 to 5 millimeters in three separate planes for knee motion, all add up to moderate instability of the right knee. Absent greater impairment and symptomatology, such as greater instability, the preponderance of the evidence is against a higher disability rating. The appeal must therefore be denied.

 PTSD 

The RO granted service connection for PTSD related to the fall in service and assigned a 30 percent disability rating in a June 2012 decision. The Veteran perfected a timely appeal as to the rating assigned. 

A 30 percent disability evaluation is warranted for occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events).

A 50 percent evaluation envisions occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short-and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships.

In the June 2012 decision, the RO carefully explained that in addition to PTSD, the Veteran also had other nonservice-connected mental health conditions, to include schizoaffective disorder and cognitive impairment. Because the symptoms of these disabilities were medically separable from the symptoms of PTSD, the RO was able to only consider the PTSD symptomatology in assigning the 30 percent disability rating which is at issue here. 

The evidence of record contains voluminous records reflecting psychiatric treatment and evaluation over the years between 2006 (when he filed the claim for service connection) and his death in 2013. Where it is not possible to distinguish the effects of a non-service- connected condition from those of a service-connected condition, the reasonable doubt doctrine dictates that all symptoms be attributed to the Veteran's service-connected disability. 38 C.F.R. § 3.102; Mittlieder v. West, 11 Vet. App. 181 (1998). However, in this case, it appears that the Veteran's schizoaffective disorder caused greater symptomatology, with episodes of clinical decompensation when he failed to adhere to his prescribed treatments. 

Records generated by the Social Security Administration reveal that agency considered the Veteran to have been unemployable due to a combination of PTSD, adjustment disorder, major depression, substance addiction, and morbid obesity, as well as multiple physical disabilities. 

Careful review of the Global Assessment of Functioning (GAF) Scores assigned throughout the pertinent time frame shows that each GAF fell between 51 and 60. The assignment of GAF scores under 60 represents the assessments of mental health professionals that the veteran has "moderate symptoms or moderate difficulty in social, occupational, or school functioning" related to all of his mental health impairments, taken together. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, Fourth Edition, The American Psychiatric Association (1994), (DSM-IV).

Thus, the question before the Board is not about the overall impact of the Veteran's mental disabilities, including schizoaffective disorder, PTSD, and a cognitive disorder, as the overall impact was clearly much more significant than a 30 percent disability rating. Rather, the Board must determine the level of impairment caused by his PTSD alone, as his other psychiatric disabilities (including schizoaffective disorder, and a cognitive disorder, as well as the obesity and substance abuse identified by the Social Security Administration) are not service-connected. 

Private mental health evaluations and VA treatment records identify anxiety and some avoidance issues related to the Veteran's PTSD. Most of the Veteran's other psychiatric symptomatology, including the episodes of clinical decompensation, lessened contact with reality, hypomanic and depressive episodes, paranoid beliefs and hallucinations, have been attributed to his schizoaffective disorder by both VA and private medical care providers and evaluators. 

In summary, the Board holds that the RO's assignment of a 30 percent disability rating for PTSD more nearly approximates the level of symptomatology related to PTSD, as opposed to those symptoms which have been attributed to nonservice-connected disability. A higher disability rating is not warranted absent greater impairment related to PTSD. The preponderance of the evidence is against the claim and the appeal for a higher disability rating is denied.


Extra-schedular consideration

Generally, evaluating a disability using either the corresponding or analogous Diagnostic Codes contained in the rating schedule is sufficient. See 38 C.F.R. § 4.20, 4.27. For exceptional cases, VA has authorized the assignment of extraschedular ratings and provided the following guidance for awarding such ratings:

To accord justice, therefore, to the exceptional case where the schedular evaluations are found to be inadequate, the Under Secretary for Benefits or the Director, [C & P], upon field station submission, is authorized to approve on the basis of the criteria set forth in this paragraph an extra-schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities. The governing norm in these exceptional cases is: A finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards. 38 C.F.R. § 3.321(b).

As the Court recently explained in Thun, a "determination of whether a claimant is entitled to an extraschedular rating under § 3.321(b) is a three-step inquiry." Thun v. Peake, 22 Vet. App. 111, 115 (2008). If the RO or Board determines that (1) the schedular evaluation does not contemplate the claimant's level of disability and symptomatology, and (2) the disability picture exhibits other related factors such as marked interference with employment or frequent periods of hospitalization, then (3) the case must be referred to an authorized official to determine whether, to accord justice, an extraschedular rating is warranted. Neither the RO nor the Board is permitted to assign an extraschedular rating in the first instance; rather the matter must initially be referred to those officials who possess the delegated authority to assign such a rating. See Floyd v. Brown, 9 Vet. App. 88, 95 (1996). Anderson v. Shinseki, 22 Vet. App. 423 (2009). 

Here the Board finds that, the symptomatology and impairment caused by the Veteran's service-connected disabilities are specifically contemplated by the schedular rating criteria, and no referral for extraschedular consideration is required. The Veteran's symptoms of frostbite residuals, instability of his right knee, and PTSD fit neatly into the criteria described for the disability ratings assigned. He did not have symptoms involving bone loss of the anterior mandible, as explained above. Additionally, applicable case law mandates the Board consider the overall functional effect of symptoms such as pain, limited motion, fatigability, weakness, incoordination and other symptoms. See Johnson v. Brown, 9 Vet. App. 7, 10 (1996); DeLuca v. Brown, 8 Vet. App. 202 (1995); Mitchell v. Shinseki, 25 Vet. App. 32, 44 (2011). Such consideration has been accomplished herein.

The Board has considered this information in making all the pertinent determinations in this case, and the information does not present any basis for finding that referral for extraschedular consideration is warranted. Therefore, the first prong of Thun is not satisfied and the Board declines to remand this issue for referral for extraschedular consideration.

The Board also finds that the rating schedule is adequate, even in regard to the collective and combined effect of all of the Veteran's service connected disabilities, and that referral for extraschedular consideration of any combined effect is not warranted under the circumstances of this case. Johnson v. McDonald, 2013-7104, 2014 WL 3844196 (Fed. Cir. Aug. 6, 2014).

ORDER

New and material evidence having been submitted to reopen the previously denied claim for entitlement to service connection for a back disability, the claim is reopened.

Absent a final, unappealed denial of service connection for a bilateral shoulder disability, the original claim remains on appeal. 

Service connection for a left knee disability is denied.

A disability rating greater than 30 percent for residuals of frostbite of the left foot is denied.

A disability rating greater than 30 percent for residuals of frostbite of the right foot is denied.

A disability rating greater than 20 percent for bone loss of the anterior mandible with limitation of motion is denied.

Disability ratings greater than 10 percent and 20 percent on and after April 6, 2012, for right knee instability is denied.

An initial disability rating greater than 30 percent for PTSD is denied.
 (CONTINUED ON NEXT PAGE)

REMAND

Back

As the Board has reopened the claim for entitlement to service connection, a de novo review is required at this point. In this regard, the record contains evidence of a fall from a cliff during service. The Veteran broke his wrist and lost four teeth during the fall, evidencing the impact and force sustained by his body during the fall. The record also contains evidence of the presence of back disabilities prior to the Veteran's death. What is lacking to support the claim is a medical nexus opinion. Therefore upon remand, the Veteran's claims file, including the medical treatment records which are contained in his electronic file, should be provided to a VA physician for review and an opinion as to whether the back disabilities shown prior to his death were related in any way to the fall in service or to any other event shown in the Veteran's service treatment records.

Shoulders

As set forth above, this appeal has been ongoing for many years. The October 2003 VA examination report upon which this denial rested in part showed only complaints of pain. No shoulder disability was identified at that time. The VA examiner opined that the Veteran's shoulder pain was less likely related to service because the Veteran's wrists absorbed the trauma of the fall from the cliff. However, after the 2003 VA examination, new medical evidence reflects degenerative changes (osteoarthritis) at the acromioclavicular joint with impingement of the supraspinatus tendon. Additionally, the buddy statement reflected the Veteran's fellow soldier recalled the Veteran's shoulders being swollen and the Veteran himself complaining of pain in his shoulders shortly after the fall. 

The Board holds that to fully develop the claim, a new medical opinion addressing these factors is needed. Therefore upon remand, the Veteran's claims file, including the medical treatment records which are contained in his electronic file, should be provided to a VA physician for review and an opinion as to whether arthritis at the acromioclavicular joint with impingement of the supraspinatus tendon shown prior to the Veteran's death were related in any way to the fall in service or to any other event shown in the Veteran's service treatment records.

TDIU

The question of whether the Veteran's service-connected disabilities rendered him unable to maintain and retain employment prior to his death, without consideration of his nonservice-connected disabilities will be addressed again following the resolution of the remanded claims for entitlement to service connection for a back disability and a bilateral shoulder disability.

Dependency and indemnity compensation

In August 2013, the Pension Management Center denied entitlement to dependency and indemnity compensation based upon a claim for entitlement to service connection for the cause of the Veteran's death. The appellant filed a notice of disagreement in June 2014. Although she noted that her disagreement was with a denial of accrued benefits, she indicated the August 2013 decision as the one with which she disagreed. Given that the RO has not rendered a formal denial of accrued benefits; that the many terms of art such as "accrued benefits," and "dependency and indemnity compensation," which are employed by the VA are highly technical and can be confusing; and that the appellant specifically indicated disagreement with the August 2013 determination, the Board finds that the appellant's June 2014 statement constitutes a notice of disagreement with the August 2013 decision, because it was filed within the requisite time period and it indicates dissatisfaction and a desire to contest the denial. See 38 C.F.R. §§ 20.201, 20.302. 

In fact, the Pension Management Center sent a letter to the appellant a few days later in June 2014, acknowledging the notice of disagreement, but a statement of the case has not been issued. 

After a notice of disagreement has been filed in any claim, the RO is required to issue a statement of the case containing a summary of the evidence, the applicable laws and regulations, and an explanation as to the decision previously reached, unless the appellant has withdrawn the notice of disagreement. 38 C.F.R. §§ 19.26, 19.29. Technically, when there has been an initial RO adjudication of a claim and a notice of disagreement has been filed as to its denial, thereby initiating the appellate process, a remand is required for procedural reasons. Manlincon v. West, 12 Vet. App. 238 (1999).

Thus, the Board accepts limited jurisdiction over this issue, for the sole purpose of remanding to order issuance of a statement of the case along with information about the process for perfecting an appeal as to this claim, if the appellant so desires.

Accordingly, the case is REMANDED for the following action:

1. The Veteran's claims file, including the medical treatment records which are contained in his electronic file, should be provided to a VA physician for review and an opinion as to whether the back disabilities and/or shoulder disabilities shown prior to his death were as likely as not related in any way to the fall in service or to any other event shown in the Veteran's service treatment records. The complete rationale for all opinions expressed should be fully explained.

2. After the development requested above has been completed, the RO should again review the record, adjudicating the two remaining service connection appeals (on the merits) and the appeal for a TDIU prior to the Veteran's death. If any benefit sought on appeal remains denied, the appellant and her attorney should be furnished a supplemental statement of the case and given the opportunity to respond thereto. 

3. The RO should furnish the appellant with a statement of the case pertaining to the issue of entitlement to dependency and indemnity compensation based upon a claim for entitlement to service connection for the cause of the Veteran's death. This claim will not be returned to the Board unless the appellant perfects an appeal by filing a timely substantive appeal.

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2014).


______________________________________________
MICHELLE L. KANE
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs